**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JANYIA SUNKINS,

           **Plaintiff,**

v.                                               CIVIL NO. 2:23cv91

HAMPTON ROADS CONNECTOR PARTNERS,

           **Defendant.**

<u>**OPINION AND ORDER**</u>

This matter comes before the court on Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"). <u>See</u> ECF No. 15. For the following reasons, the Motion to Dismiss is **DENIED**.

## I. PROCEDURAL HISTORY

Plaintiff filed her initial Complaint, ECF No. 1, on March 10, 2023, alleging that her employer discriminated against her in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3. The Complaint named four entities as defendants: Dragados USA, Inc.; Vinci Construction Grands Projets Inc.; Flatiron Constructors, Inc.; and Dodin Campenon Bernard Inc (collectively "Entity Defendants"). <u>Id.</u> at 1. Plaintiff stated that these entities were part of a joint venture known as Hampton Roads Connector Partners ("HRCP" or "Defendant"). <u>Id.</u>

On March 29, 2023, Plaintiff filed an Amended Complaint, ECF No. 4, adding claims under the Virginia Human Rights Act, as amended by the Virginia Values Act, Va. Code. § 2.2-3902. ("VHRA"). After the court granted Plaintiff leave to file a Second Amended Complaint, ECF No. 8, Plaintiff filed her Second Amended Complaint on April 25, 2023, which dropped the Entity Defendants as named parties and only alleged these claims against HRCP. ECF No. 10 (Second. Am. Compl.). The Second Amended Complaint alleged three counts against HRCP: hostile work environment, constructive discharge, and retaliation. Id. ¶¶ 73-106.

On June 26, 2023, Defendant filed its Motion to Dismiss, ECF No. 15, along with a Memorandum in Support, ECF No. 16. Plaintiff responded on July 17, 2023, ECF No. 20, and Defendant replied on July 27, 2023, ECF No. 21. Accordingly, having been fully briefed, the Motion to Dismiss is now ripe for judicial determination.

## II. MOTION TO DISMISS LEGAL STANDARD

A complaint must be dismissed if the plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To meet the pleading standard established in Rule 8 of the Federal Rules of Civil Procedure and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

2

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id. (citing Twombly, 550 U.S. at 556).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."   Erickson v. Pardus, 551 U.S. 89, 94 (2007) (collecting cases).   However, courts "need not accept a complaint's legal conclusions," ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 212 (4th Cir. 2019) (citing Iqbal, 556 U.S. at 678), as Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," see Iqbal, 556 U.S. at 678-79.

### III.  FACTUAL BACKGROUND

The court draws the following facts from the Second Amended Complaint, which it accepts as true for the purposes of ruling on the instant motion.[1]  On December 21, 2020, Plaintiff began working as a flagger for HRCP.   Second Am. Compl. ¶ 26.   She primarily worked at the Water Treatment Plant at the Norfolk worksite.   Id.

---

[1] Plaintiff bases her three claims on the same set of operative facts.  See Second Am. Compl. ¶¶ 73, 84, and 98.

During her period of employment relevant to this action, Plaintiff's supervisor was Plummer Jennings. Id. ¶ 29.

In March 2021, Plaintiff's coworker, Luther Wayne, first approached her on the job and asked her "how old are you" and "what do you like?" Id. ¶ 31. Plaintiff interpreted the second question as inquiring about her sexual preferences, id., and she informed Wayne that she is a lesbian and was not interested in his advances. Id. ¶ 33. Plaintiff immediately reported the conduct to Jennings. Id. ¶ 35. Jennings indicated that he would "take care of it," but apparently did not take any action following this incident. Id. ¶ 36.

Wayne approached Plaintiff again in May 2021, asking for her address and stating that he wanted to cook for her. Id. ¶ 38. Plaintiff again informed Wayne that she was not interested and reported the conduct to Jennings. Id. ¶¶ 38-39. Jennings told Plaintiff that he would talk to Wayne about his behavior, but again, apparently did not take any action. Id. ¶¶ 39-40.

In June 2021, Wayne asked Plaintiff to accompany him to his home and stated, "I would hold the umbrella so you don't get wet." Id. ¶ 41. It was not raining when Wayne made this remark, so Plaintiff interpreted Wayne's statement as a reference to sexual arousal. Id. ¶ 42. On November 17, 2021, Wayne asked Plaintiff to "cut a slit down the side" of her new work shirt "like the girls do." Id. ¶ 46. Wayne then offered Plaintiff money to cut a hole

4

in the middle of her work shirt. <u>Id.</u> Plaintiff reported this conduct to Jennings and told him that she would report the conduct HRCP's Human Resources ("HR") representatives. <u>Id.</u> at ¶ 48.

Plaintiff spoke with HRCP HR representatives on November 22, 2021. <u>Id.</u> ¶ 50. The HR personnel told Plaintiff that Wayne would not be permitted to be within 50 feet of her and they asked her to write a statement regarding the harassment she experienced. <u>Id.</u> ¶ 50. Plaintiff submitted her written statement to HRCP HR personnel on November 29, 2021. <u>Id.</u> ¶ 51. The HR representatives provided an ambiguous response as to how they planned to handle the situation, <u>id.</u>, but Wayne was absent from the workplace for approximately seven weeks following this incident, <u>id.</u> ¶ 56.

A few days after Plaintiff submitted her statement to HRCP HR personnel, Jennings called Plaintiff and asked if she wanted to have sex with him and another female coworker. <u>Id.</u> at ¶ 52. Plaintiff apparently did not report this incident to HRCP HR personnel as there is no allegation to this effect.

Wayne returned to the Norfolk worksite on January 17, 2022. <u>Id.</u> ¶ 56. Plaintiff asked Jennings why Wayne was permitted to work near her again. <u>Id.</u> ¶ 57. Jennings told her that there had been personnel changes in the HR department and that she would have to file a new complaint with HR, if she had a problem with the situation. <u>Id.</u> ¶ 58. Plaintiff tried to express her concerns

to several different HR representatives, but none of them addressed the situation.  Id. ¶ 60-61.

Prior to Plaintiff's complaints, HRCP regularly allowed all female employees at the Norfolk worksite to use interior restrooms because they were cleaner than the exterior portable toilets.  Id. ¶ 62.  However, on February 1, 2023, HRCP management refused to allow Plaintiff to use an interior restroom.  Id. ¶ 63.  Another female employee who had not complained about harassment was allowed continued access to the interior restrooms.  Id.

On February 3, 2023, Plaintiff asked an HR representative if she could use the interior restrooms, but the HR representative told her that she was not permitted to use them.  Id. ¶ 65. Plaintiff again witnessed another female employee access the interior restrooms that day.  Id.  Plaintiff also encountered Wayne at the workplace that day, although the nature of this encounter is unclear.  Id.  Plaintiff complained to HR about her situation, but an HR representative told her that he did not know how to address it.  Id.  Plaintiff resigned her employment later that day.  Id. ¶ 69.

## IV. ANALYSIS
### A. Count One — Hostile Work Environment

#### 1.

Count One of Plaintiff's Second Amended Complaint alleges that Defendant violated Title VII and VHRA by creating a hostile

6

work environment.  Second Am. Compl. ¶¶ 73-83.  Plaintiff's Title VII and VHRA discrimination claims are based on the same facts and the statutes are substantially the same, so the court analyzes these claims together.  See Abreu v. N. Am. Partners in Anesthesia, LLP, 2023 WL 5959430, at *10 n.8 (E.D. Va. Sept. 12, 2023) (analyzing Title VII and VHRA claims together because the claims rested on the same facts and the plaintiff "provide[d] no alternative framework by which to analyze his VHRA claims"); Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc., 2023 WL 4032875, at *6 n.4 (W.D. Va. June 15, 2023) (analyzing Title VII and VHRA claims together because the statutes use "substantially identical language").

An employer violates the substantive discrimination provision of Title VII when it subjects an employee to a hostile work environment.  Laurent-Workman v. Wormuth, 54 F.4th 201, 210 (4th Cir. 2022) (citing Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 276-77 (4th Cir. 2015) (en banc)).  The elements of a Title VII claim for hostile work environment are: "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  Strothers v. City of Laurel, 895 F.3d 317, 328 (4th Cir. 2018) (alteration in original) (internal

quotation marks omitted) (quoting <u>Okoli v. City of Balt.</u>, 648 F.3d 216, 220 (4th Cir. 2011)).

"At the motion to dismiss stage, an employment discrimination plaintiff is not required to plead a prima facie case." <u>Jalmiran v. Alutiiq Com. Enters., LLC</u>, 639 F. Supp. 3d 605, 608 (E.D. Va. 2022) (citing <u>Bing v. Brivo Sys., LLC</u>, 959 F.3d 605, 616-17 (4th Cir. 2020)). "Instead, the plaintiff is merely 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" <u>Id.</u> at 609 (quoting <u>McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.</u>, 780 F.3d 582, 585 (4th Cir. 2015)). Accordingly, the relevant inquiry here is whether Plaintiff has plausibly alleged facts that satisfy the elements of a hostile work environment claim "above a speculative level." <u>Id.</u> (quoting <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010)).

HRCP does not dispute that Plaintiff has sufficiently alleged the first, second, or fourth elements of her hostile work environment claim at this stage of the proceedings. Rather, HRCP argues that the alleged harassment in Plaintiff's complaint is not sufficiently severe or pervasive as a matter of law to state the third element of the claim. See ECF No. 16 at 6-7. The only issue before the court then, is whether Plaintiff has plausibly alleged conduct that is sufficiently severe or pervasive to state a hostile work environment claim above a speculative level.

Although the severity or pervasiveness of harassment can be a question of fact, a district court may dismiss a complaint that does not allege facts suggesting that the defendant's conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment.  See Mustafa v. Iancu, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) (dismissing complaint because it "[did] not allege facts suggesting that defendant's alleged harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment."); Milo v. CyberCore Techs., LLC, 2019 WL 4447400, at *6 (D. Md. Sept. 17, 2019) (dismissing complaint where court found that plaintiff's allegations were insufficient to raise a right to relief above the speculative level); Sumner v. Mary Washington Healthcare Physicians, 2016 WL 5852856, at *9 n.10 (E.D. Va. Sept. 30, 2016) ("Even recognizing that the severity or pervasiveness of harassment can be a question of fact, district courts within the Fourth Circuit regularly grant motions to dismiss when appropriate.").

"A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Boyer-Liberto, 786 F.3d at 277 (alteration in original) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "The 'severe or pervasive' element of a hostile work

9

environment claim 'has both subjective and objective components."
EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)
(quoting Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th
Cir. 2003) (en banc)).  The subjective component requires Plaintiff
to show that she "subjectively perceive[d] the environment to be
abusive."  Id. (alteration in original) (internal quotation marks
omitted) (quoting Harris, 510 U.S. at 21-22).  The objective
component requires Plaintiff to show that "the conduct was such
that 'a reasonable person in [her] position' would have found the
environment objectively hostile or abusive."  Id. (quoting Oncale
v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)).
Because Defendant does not, and could not, challenge whether
Plaintiff subjectively found the alleged conduct to be abusive,
the court focuses on the objective component.

     "Whether the environment is objectively hostile or abusive is
judged from the perspective of a reasonable person in the
plaintiff's position."  Irani v. Palmetto Health, 767 F. App'x
399, 416 (4th Cir. 2019) (internal citation omitted) (quoting
Boyer-Liberto, 786 F.3d at 277)).  "This objective determination
requires consideration of all circumstances, which 'may include
the frequency of the discriminatory conduct; its severity; whether
it is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance.'"  Id. (quoting Harris, 510 U.S. at

23). However, "'[n]o single factor is' dispositive." Sunbelt Rentals, Inc., 521 F.3d at 315 (alteration in original) (quoting Harris, 510 U.S. at 22). "The behavior need not be both severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." Reed v. AirTran Airways, 531 F. Supp. 2d 660, 669 n.15 (D. Md. 2008). An "'isolated incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" Boyer-Liberto, 786 F.3d at 277 (alteration in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

The Fourth Circuit has recognized that plaintiffs must clear a "high bar" to satisfy the severe or pervasive test. Sunbelt Rentals, Inc., 521 F.3d at 315. "Title VII does not establish a 'general civility code for the American workplace.'" Id. (quoting Oncale, 523 U.S. at 80). The law "tolerates a level of poor conduct by an employer that is at odds with the courtesy and respect that an employee might not unreasonably expect." Faulkenberry v. U.S. Dep't of Def., 2023 WL 3074639, at *10 (D. Md. Apr. 25, 2023). "Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." See EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010) (citing Faragher, 524 U.S. at 788); see also Ziskie v. Mineta, 547 F.3d 220, 228 (4th Cir. 2008) ("[W]hile no one condones boorishness,

there is a line between what can justifiably be called sexual harassment and what is merely crude behavior."). This delineation between actionable harassment and non-actionable, but distasteful conduct, prevents courts from becoming "embroiled in never-ending litigation and impossible attempts to eradicate the ineradicable." Fairbrook Med. Clinic, 609 F.3d at 328.

Courts in the Fourth Circuit regularly place greater weight on misconduct when the perpetrator is the plaintiff's supervisor. See id. at 329 (finding that the supervisory position of the harasser could enhance the severity of the conduct); Kerns v. RCS Trucking & Freight, Inc., 2023 WL 4868555, at *5-6 (E.D. Va. July 31, 2023) (applying greater weight to misconduct by a supervisor); Riley v. S.C. Dep't of Corr., 2021 WL 4597066, at *8 (D.S.C. July 27, 2021) ("[T]he severity of sexual misconduct is compounded when the perpetrator is in a supervisory position over the plaintiff."). "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor" because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Boyer-Liberto, 786 F.3d at 278 (internal quotation marks and citations omitted). "[A]n employee generally cannot check a supervisor's abusive conduct the same way that she might deal with abuse from a co-worker." Faragher, 524 U.S. at 803.

## 2.

Here, the court, on a motion to dismiss, is tasked with the determination of whether the alleged conduct is an unfortunate "ordinary tribulation[] of the workplace" or whether it is "the kind of male attention[] that can make the workplace hellish for women." Ocheltree, 335 F.3d at 333 (internal quotation marks and citations omitted).   This "'line between a merely unpleasant working environment . . . and a hostile or deeply repugnant one' may be difficult to discern." Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) (quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995)).    HRCP    argues that the alleged conduct falls on the non-actionable side of the line.   ECF No. 16 at 6-7.   Indeed, other courts in the Fourth Circuit have found that conduct was not sufficiently severe or pervasive where the plaintiff alleged sexual advances and inappropriate touching.   See, e.g., Taylor v. Republic Servs., Inc., 968 F. Supp. 2d 768, 793 (E.D. Va. 2013) (sexual advances and multiple instances of unwanted physical touching); Honerkamp v. Charlotte-Mecklenburg Hosp. Auth., 2021 WL 3475679, at *4 (M.D.N.C. Aug. 6, 2021) (unspecified sexual advances and multiple instances of unwanted touching).

However, the circumstances surrounding each case are unique. In considering all the circumstances to determine the objective severity of the harassment, Plaintiff's allegation that Jennings

directly propositioned her to participate in a sex act with another employee is significant.  <u>See</u> <u>Oncale</u>, 523 U.S. at 81.  The court considers the distinctive aspects present here of the supervisor's direct sexual proposition following her complaints of unwelcome conduct to him, combined with Wayne's ongoing conduct and HRCP's apparent failure to address the situation, as establishing a claim of a sufficiently severe or pervasive hostile workplace at this motion to dismiss juncture.

Even comparing incidents of sexual harassment in the abstract, the conduct alleged here is at least comparable to conduct in other cases where courts in this Circuit sustained plaintiffs' hostile work environment claims.  In <u>Bland v. Fairfax Cnty.</u>, the plaintiff alleged that her supervisor made sexual comments at three in-person meetings and six telephone conversations over a six-year period.  2011 WL 1660630, at *13-15 (E.D. Va. May 3, 2011).  Despite the relatively low frequency of incidents, and the lack of any physical touching or direct propositions, the court found that a reasonable juror could determine that the harassment was severe or pervasive.  <u>Id.</u>  In <u>Lopez v. BMA Corp.</u>, the plaintiff alleged that her coworker made sexual comments to her for over a month.  2013 WL 6844361, at *2 (D. Md. Dec. 24, 2013).  Although she alleged that her supervisor failed to take action to stop this behavior, she did not allege that her supervisor directly participated in the harassment or

14

that she was sexually propositioned. <u>Id.</u>  The District of Maryland denied the defendant's motion to dismiss, finding that the alleged conduct was enough to plausibly state a hostile work environment claim. <u>Id.</u> at *10-11.

After considering the full "constellation of surrounding circumstances, expectations, and relationships," <u>Oncale</u>, 523 U.S. at 82, and drawing all inferences in favor of the plaintiff at this motion to dismiss stage, the court finds that Plaintiff has alleged conduct that is sufficiently severe and pervasive to cross the line into actionable harassment. Accordingly, Defendant's Motion to Dismiss Count One is **DENIED**.

### B. Count Two – Constructive Discharge

Count Two of Plaintiff's Second Amended Complaint alleges that the HRCP violated Title VII and VHRA by constructively discharging her. Second Am. Compl. ¶¶ 84-97. Plaintiff and Defendant disagree on the relevant legal standard for analyzing this claim. HRCP argues that Plaintiff must allege the prima facie elements of a disparate treatment claim:  1) her membership in a protected class; 2) satisfactory job performance; 3) an adverse employment action; and 4) that she was treated more harshly than similarly situated employees outside the protected class. ECF No. 16 at 8 (citing <u>Tabb v. Bd. of Educ. of Durham Pub. Sch.</u>, 29 F.4th 148, 157 (4th Cir. 2022)). Under HRCP's proposed standard, the constructive discharge would serve as the adverse employment

action.  See id. (citing Alba v. Merrill Lynch & Co., 198 F. App'x
288, 294 (4th Cir. 2006)).  HRCP further argues that Plaintiff
must show that HRCP's actions were deliberate.  Id. at 9 (quoting
Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir.
2006)).  The court rejects both arguments.

### 1.

Plaintiff does not need to separately allege the prima facie
elements of a disparate treatment claim because her constructive
discharge claim is based on the hostile work environment.
Constructive discharge is a legal fiction that serves as a
component of a larger claim.  See Bradley v. U.S. Foods, Inc.,
2015 WL 5158731, at *18 (D.S.C. Sept. 2, 2015) ("[C]onstructive
discharge is an element of a structurally larger claim . . . as
opposed to some legal end unto itself.").  However, the claim is
"distinct from the underlying discriminatory act." Green v.
Brennan, 578 U.S. 547, 559 (2016).  While constructive discharge
can serve as the adverse action element of a disparate treatment
claim, disparate treatment is not the only context that can result
in constructive discharge.

In Pennsylvania State Police v. Suders, the Supreme Court
recognized a combined "hostile-environment constructive discharge"
claim.  542 U.S. 129, 146-47 (2004).  A plaintiff can make a
"hostile-environment constructive discharge" claim where the
plaintiff alleges "constructive discharge to be one of the results

of her hostile work environment." See Evans v. Int'l Paper Co., 936 F.3d 183, 191-92 (4th Cir. 2019). Here, the crux of Plaintiff's claim is that the hostile work environment was so severe that she had no choice but to resign. Because Plaintiff alleges that constructive discharge was a resulting consequence of the hostile work environment, the court analyzes Plaintiff's constructive discharge claim as such a "hostile-environment constructive discharge" claim.[2] See id. at 191 (finding that the complaint alleged a hostile-environment constructive discharge claim where the record indicated plaintiff's attempt to combine these claims).

---

[2] The court notes that Plaintiff alleges the constructive discharge claim as an independent cause of action. See Second Am. Compl. ¶¶ 84-97. Courts in this Circuit have cast doubt on the idea that a constructive discharge can serve as a standalone cause of action. See, e.g., Crockett v. SRA Int'l, 943 F. Supp. 2d 565, 576-77 (D. Md. 2013) (finding that plaintiff's constructive discharge claim failed as a matter of law because constructive discharge is not a stand-alone claim); Schrof v. Clean Earth, Inc., 2023 WL 3763984, at *7 (D. Md. June 1, 2023) ("[Constructive discharge] is not an independent cause of action which entitles plaintiff to relief."); Williams v. Newport News Sch. Bd., 2021 WL 3674983, at *18 (E.D. Va. Aug. 19, 2021) ("[T]here is no stand-alone cause of action for constructive discharge."). However, "[t]he Fourth Circuit has yet to expressly rule on the question of whether constructive discharge constitutes an independent cause of action." Lloyd v. Riveredge Operating Co., LLC, 2021 WL 2550495, at *4 n.3 (D. Md. June 21, 2021); c.f. Navarrete v. Miller & Long Co., 2013 WL 6036840, at *5 (D. Md. Nov. 13, 2013) ("Courts differ on the question of whether constructive discharge constitutes an independent cause of action."). Because the court interprets Plaintiff's constructive discharge as a resulting consequence of her hostile work environment claim, the court need not decide whether constructive discharge is an independent cause of action.

"To establish a hostile-environment constructive discharge claim, a plaintiff must show the requirements of both a hostile work environment and a constructive discharge claim." Id. at 192 (citing Suders, 542 U.S. at 146-47). Because the court has already determined that Plaintiff plausibly alleged a hostile work environment claim, the only issue before the court is whether Plaintiff has plausibly alleged the elements of constructive discharge.

**2.**

To establish constructive discharge, Plaintiff must show that 1) her working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign, and 2) that she actually resigned. Perkins v. Int'l Paper Co., 936 F.3d 196, 211-12 (4th Cir. 2019) (citing Green, 578 U.S. at 555). There is no dispute that Plaintiff actually resigned, so the issue is whether the allegations satisfy the intolerability requirement.

HRCP argues that Plaintiff must also show that HRCP deliberately made the working conditions intolerable. ECF No. 16 at 9 (quoting Heiko, 434 F.3d at 262). However, in EEOC v. Consol Energy, Inc., the Fourth Circuit explicitly recognized that "deliberateness" is no longer a required component of constructive discharge following the Supreme Court's holding in Green v. Brennan. 860 F.3d 131, 144 (4th Cir. 2017) (citing Green, 578 U.S. at 555). "The Supreme Court now has clearly articulated the

18

standard for constructive discharge, requiring objective 'intolerability' — 'circumstances of discrimination so intolerable that a reasonable person would resign' — but not 'deliberateness,' or a subjective intent to force a resignation." Id. (internal citation omitted) (quoting Green, 570 U.S. at 555); see Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 235 (4th Cir. 2022) (adopting Consol Energy standard); see also, Lindsay-Felton v. FQSR, LLC, 352 F. Supp. 3d 597, 606 (E.D. Va. 2018) (quoting Consol Energy, 860 F.3d at 144-45) ("[T]he controlling legal test no longer requires a plaintiff to demonstrate that the defendant had a 'subjective intent to force a resignation.'"). Instead, to establish constructive discharge, Plaintiff needs only to allege the intolerability of her working conditions. See Kerns, 2023 WL 4868555, at *9 (citing Chapman, 48 F.4th at 235). Thus, the only issue before the Court is whether Plaintiff has sufficiently alleged objective intolerability.[3]

---

[3] In its Reply Memorandum in Support of its Motion to Dismiss, HRCP points to several cases where Fourth Circuit courts applied the "deliberateness" standard following EEOC v. Consol Energy, Inc., to suggest that "deliberateness" is still a requirement of establishing constructive discharge. ECF No. 21 at 6-7. However, the most recent Fourth Circuit opinion on this issue affirmed the Consol Energy holding that deliberateness is no longer a requirement for establishing constructive discharge. Chapman, 48 F.4th at 235 (holding that district court's application of the deliberateness standard was reversible error). The court is inclined to follow the Fourth Circuit's explicit rejection of the deliberateness standard in Consol Energy and the recent endorsement of this holding in Chapman.

A showing of intolerability requires "something more" than the severe or pervasive conduct that suffices for a hostile work environment claim.  Evans, 936 F.3d at 193 (quoting Suders 542 U.S. at 147).  "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign," but rather, "whether a reasonable person in the employee's position would have felt compelled to resign."  Perkins, 936 F.3d at 211-12 (citations omitted).  "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."  Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (internal quotation marks omitted) (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)).  The frequency of the alleged conduct is also relevant.  "Continuous conduct" is more likely to establish intolerability, while "isolated or infrequent conduct" is less likely to establish intolerability.  Evans, 936 F.3d at 193.

### 3.

The objective intolerability of Plaintiff's constructive discharge claim is based on the sexual harassment, HRCP's failure to remediate the situation, and HRCP's revocation of her access to interior bathrooms.  Second Am. Compl. ¶¶ 84-97.  The totality of

circumstances alleged in the Second Amended Complaint plausibly suggest an objectively intolerable work environment.   Plaintiff had to endure unwelcome sexual advances from her coworker and her supervisor, and she was required to continue working with her harassers.   These conditions do not suggest a workplace that was merely unpleasant, they suggest an environment imbued with insult and indignity.

Moreover, despite Plaintiff's complaints, HRCP failed to address the situation.   An employer's failure to address sexual harassment may contribute to an objectively intolerable workplace when the employer requires the employee to have continued interactions with her harasser.   See, e.g., Bailey v. Va. Dep't of Alcoholic Beverage Control, 2019 WL 123903, at *7 (E.D. Va. Jan. 7, 2019) (finding that a plaintiff alleged objectively intolerable conditions where her employer required her to continue working with harasser); Dixon v. Boone Hall Farms, Inc., 2019 WL 6130472, at *4 (D.S.C. Nov. 19, 2019) (finding that intolerability was genuine issue of material fact where employer required employee to continue working with her sexual abuser); Lopez, 2013 WL 6844361, at *12 (finding that plaintiff alleged an objectively intolerable workplace where her manager ignored her complaints and required her to continue working with harasser).

The court finds, at this juncture and stage of the proceeding, that Plaintiff has plausibly alleged a constructive discharge

claim.   Accordingly, Defendant's Motion to Dismiss Count Two is **DENIED**.

### C. Count Three - Retaliation

Count Three of Plaintiff's Second Amended Complaint alleges that HRCP violated Title VII and VHRA by retaliating against her for engaging in protected activity.[4] Second Am. Compl. ¶¶ 98-106. The antiretaliation provision of Title VII prohibits an employer from discriminating against an employee because the employee opposed any practice made unlawful under Title VII or because the employee made a charge of employment discrimination.   42 U.S.C. 2003e-3(a).   "To establish a prima facie claim of retaliation, a plaintiff must show: (1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against [her,] and (3) there is a causal connection between the protected activity and the adverse action."   Perkins, 936 F.3d at 213. Keeping in mind the standard of review on a motion to dismiss, Plaintiff needs only to allege conduct that would plausibly satisfy the elements of unlawful retaliation.   See Jalmiran, 639 F. Supp. 3d at 608-09.

---

[4] The court also addresses the Title VII and VHRA retaliation claims together because they are based on the same facts and the statutes are substantially the same.   See Dufort v. Liberty Univ., 2023 WL 137496, at *6 (W.D. Va. Jan. 9, 2023).

1.

The first element of a retaliation claim is that the plaintiff engaged in a protected activity. "[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). Participation activities are those activities outlined in Section 2000e-3, such as making a charge, testifying, or participating in an investigation under Title VII. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). Employees engage in protected oppositional activity when, inter alia, they "complain to their superiors about suspected violations of Title VII." Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543-44 (4th Cir. 2003). Title VII's antiretaliation provision protects activities in opposition to actions that are actually unlawful, as well as in opposition to actions that an employee "reasonably believes to be unlawful." Navy Fed., 424 F.3d at 406.

Here, Plaintiff only alleges that she engaged in oppositional activity. Plaintiff alleges that she made seven complaints about her workplace: three complaints to Jennings regarding Wayne's conduct, one complaint to HR personnel regarding Wayne's conduct, one complaint to Jennings regarding Wayne's return to the workplace, one complaint to HRCP HR personnel regarding Wayne's return to the workplace, and one complaint to HRCP HR personnel

23

regarding her loss of interior bathroom access.  HRCP does not dispute that Plaintiff's complaints constitute protected oppositional activity and the court is satisfied that Plaintiff has sufficiently alleged the first element of a retaliation claim.

**2.**

Although causation is the third element of a retaliation claim, the court addresses it next to clarify the actions that are relevant to the retaliation claim.  At this stage in the litigation, establishing a causal relationship between the protected activity and the adverse action is not an "onerous burden" and Plaintiff does not have to show that her protected activity was the "but-for" cause of the adverse action.  Strothers, 895 F.3d at 335.  Instead, Plaintiff needs only to show that "1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity."  Id. at 336.  Plaintiff suggests that the court should consider all of the allegations that comprise her hostile work environment claim as part of her retaliation claim.  However, for the purpose of a retaliation claim, it is obvious that the only relevant actions are those that are taken in response to her protected activity. See Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020) ("The very premise of a retaliation claim is that the

employer has subjected an employee to adverse consequences in response to her complaint of discrimination.").

Wayne's conduct is therefore irrelevant to the retaliation claim. Even assuming that Wayne's actions could be attributed to HRCP, he apparently did not know about Plaintiff's complaints to Jennings or HRCP HR personnel. According to the Second Amended Complaint, Jennings did not take any action that would have tipped off Wayne to Plaintiff's complaints regarding the first two incidents. Wayne could have only become aware of Plaintiff's complaints after HRCP removed him from the workplace and he did not make any further comments following his removal. Thus, Wayne's comments cannot be considered as an adverse action of retaliation because he did not make the comments after becoming aware of Plaintiff's complaints. See Strothers, 895 F.3d at 336 ("[N]o causal connection can exist between an employee's protected activity and an employer's adverse action if the employer is unaware of the activity.").

The remaining actions at issue are the ones taken by those with knowledge of Plaintiff's complaints and occurred after her complaints. Plaintiff alleges three relevant adverse actions that Jennings and HRCP took following Plaintiff's complaints: (1) Jennings made a sexual proposition to Plaintiff a few days after her third complaint to him and telling him that she planned to escalate her complaints to HR; (2) HRCP returned Wayne to the

workplace approximately two months following Plaintiff's third complaint to Jennings and her initial complaint to HR; and (3) HRCP revoked Plaintiff's access to internal restrooms approximately two weeks after her complaints about Wayne's return to the workplace. "[T]emporal proximity is sufficient to establish causation at the prima facie stage," id. at 336-37, and the Fourth Circuit has found an adverse action within four months of the protected activity to be sufficiently proximate, see id. at 337 (citing Carter, 33 F.3d at 460 (4th Cir. 1994)). Here, the longest period of time between the protected activity and the adverse action is approximately two months. Thus, Plaintiff has sufficiently alleged temporal proximity necessary to establish causation at this stage for each of these actions.

### 3.

The remaining element for a retaliation claim is that the employer took a materially adverse action against the employee. Title VII recognizes a claim for retaliatory hostile work environment,[5] where the employer's creation of a hostile work environment serves as the adverse action component of the retaliation claim. See Von Gunten v. Maryland, 243 F.3d 858, 869-70 (4th Cir. 2001). A retaliatory hostile work environment

---

[5] This claim is sometimes known as "retaliatory harassment." See Hinton v. Virginia Union Univ., 185 F. Supp. 3d 807, 839 n.33 (E.D. Va. 2016).

claim "requires establishing the same facts as a retaliation claim, save that the 'materially adverse' element is replaced by 'subjected to severe or pervasive retaliatory harassment by a supervisor.'" Hinton, 185 F. Supp. 3d at 840 (quoting Laster v. City of Kalamazoo, 746 F.3d 714, 731 n.5 (6th Cir. 2014)).

The elements of a retaliatory harassment claim are similar to a substantive hostile work environment claim, except that the threshold of severe or pervasive conduct is lower. See Laurent-Workman, 54 F.4th at 218. A plaintiff alleging that an employer retaliated against her does not need to allege that the employer engaged in conduct that altered the terms and conditions of employment. Id. Instead, the plaintiff needs only to show that the conduct would "dissuade a reasonable person from making or supporting a charge of discrimination." Id. (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Thus, to establish a claim for retaliatory harassment, a plaintiff must allege conduct that: "(1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." Id.

Here, there is no question that the conduct Plaintiff experienced was unwelcome or that it can be attributed to the employer. So, as with the hostile work environment claim, the only question is whether this action was objectively severe or

27

pervasive enough to constitute an actionable claim.  <u>See</u> <u>Widmer v.</u>
<u>Austin</u>, 2023 WL 2250283, at *7 (E.D. Va. Feb. 27, 2023)
("Essentially, retaliatory harassment can satisfy the 'materially
adverse' element of the prima facie case if it is severe and
pervasive enough to meet the <u>Laurent-Workman</u> standard.").

The court has already determined that the sexual harassment
Plaintiff alleged is severe or pervasive enough to alter the terms
and conditions of the workplace.  This finding holds even when
Wayne's conduct is excluded from consideration, given the
significance of Jennings' role in the harassment as Plaintiff's
supervisor.  Conduct that exceeds the standard for stating a
substantive hostile work environment claim necessarily satisfies
the lower standard for stating a retaliatory hostile work
environment claim.  Furthermore, in considering allegations of a
hostile work environment, even as retaliatory acts, "[c]ontext
matters."  <u>Burlington</u>, 548 U.S. at 69.  Although HRCP's decision
to return Wayne to the workplace and to restrict Plaintiff's access
to internal restrooms may not be harassing conduct in the abstract,
these actions can contribute to a hostile work environment given
the surrounding circumstances.  Accordingly, the court finds that
the alleged conduct could dissuade a reasonable worker from making
or supporting a charge of discrimination and thus, constitutes a
materially adverse action.  Plaintiff has therefore plausibly

stated a claim for retaliation, and HRCP's Motion to Dismiss is **DENIED** as to Count Three.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 15, is **DENIED**.  The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.


**IT IS SO ORDERED.**

                     /s/

                     Rebecca Beach Smith
                     Senior United States District Judge

                     REBECCA BEACH SMITH
           SENIOR UNITED STATES DISTRICT JUDGE

November 9 , 2023

29